UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NICE-PAK PRODUCTS, INC., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | No. 1:15-cv-0409-TWP-DKL |
| ) | |
| UNIVAR USA INC., ) | |
| ) | |
| Defendant. ) | |

**Report and Recommendation on** *Defendant's Motion to Dismiss for Improper Venue or, in the Alternative, to Join Third Party Defendants* **[dkt. 32] and** *Defendant's Motion Requesting Oral Argument* **[dkt. 34]**

Plaintiff Lonza, Inc. purchased propylene glycol USP from Defendant Univar USA, Inc. Univar shipped the product to Lonza who incorporated the product into a product that Lonza then sold to Plaintiff Nice-Pak Products, Inc. Plaintiffs allege that the product obtained from Univar was contaminated with propylene glycol acetone ketal and that the contamination caused Nice-Pak and Lonza damages. Plaintiffs sued Defendant alleging breach of warranties, breach of contract, negligence, and for indemnity. Defendant filed a motion to dismiss for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, contending that the dispute is subject to mandatory arbitration. In the alternative, Defendant requested to be allowed to amend its pleadings to add third party defendants. Plaintiffs filed a response, opposing the motion to dismiss, and Defendant filed a reply. Defendant also moved for oral argument, asserting that "oral argument will likely assist the court in making its determination on

the Motion to Dismiss by permitting counsel for the parties to further develop any facts or legal arguments necessary for the Court's determination …." [*Def.'s Mot. Requesting Oral Arg.* at 1.] District Judge Tanya Walton Pratt designated the undersigned to issue a report and recommendation on these motions. *See* 28 U.S.C. § 636(b)(1)(B). The undersigned makes the following recommendation.

*Background*

The Complaint alleges as follows: Plaintiff Nice-Pak is engaged in the business of producing pre-moistened wipe products for cleaning, sanitization, healthcare, cosmetics and personal hygiene; Plaintiff Federal Insurance Company is subrogee of Nice-Pak; Plaintiff Lonza is in the business of supplying pharmaceutical and biotechnology industries with biopharmaceuticals; and Defendant Univar is engaged in the business of distributing chemicals and chemistry related products to its customers. [*Compl.* ¶¶ 1-4.] Lonza entered into a quantity contract (the "Contract") with Univar for various products including propylene glycol USP (the "Product") for a term from November 30, 2009 to December 31, 2012. [*Id.* ¶ 6.] The Contract is attached as *Exhibit A* to the *Complaint*. [*Id.*]

The Lonza Purchase Agreement Terms and Conditions provide in relevant part:

1. GENERAL. Each shipment received by Lonza from Seller shall be deemed to be only upon the terms, including the Standard T&Cs in this Agreement, except as they may be added to, modified, superseded, or otherwise altered by Lonza, notwithstanding any terms and conditions that may be contained in any acknowledgment, invoice or other form of Seller and notwithstanding Lonza's act of accepting or paying for any shipment or any similar act of Lonza, and Lonza hereby rejects any different or additional terms and conditions proposed by Seller.
…

> 16. MISCELLANEOUS.… This Agreement shall be governed by and construed in accordance with the laws of the state of New York without reference to its conflicts of law principles.

[*Compl., Ex. A* at 29 [dkt. 1-1 at 29].]

Pursuant to the Contract, on June 8, 2011, Lonza placed an order with Univar for 45,000 pounds of Product under Purchase Order 4500844047. [*Id.* ¶ 7; *see also Def.'s Br. Supp. Mot. Dismiss, Ex. 1*, Dkt. 33-1.] On June 17, 2011, Lonza received 45,160 pounds of Product from Univar. [*Id.* ¶ 8.] Lonza paid Univar for the Product. [*Id.* ¶ 14.] Lonza incorporated the Product into a preservative product that it sold to Nice-Pak for use in manufacturing baby wipes. [*Id.* ¶ 9.] The preservative product was shipped to Nice-Pak. [*Id.* ¶ 10.] Nice-Pak discovered that the product was contaminated. [*Id.* ¶ 11.] Lonza determined that the Product it received from Univar was also contaminated. [*Id.* ¶ 12.]

As a result of the contamination, Nice-Pak and Lonza suffered damages. [*Id.* ¶¶ 13-14.] Federal Insurance provided insurance coverage for damages occurring at Nice-Pak's business locations. [*Id.* ¶ 15.] Nice-Pak was responsible for a $100,000 deductible. [*Id.*] Pursuant to the insurance policy, Federal Insurance reimbursed Nice-Pak in an amount in excess of $900,000 and has become legally, contractually, and equitably subrogated to the rights of Nice-Pak against third-parties to the extent of the payments made. [*Id.* ¶ 16.]

Univar moves to dismiss the *Complaint* for improper venue under Fed. R. Civ. P. 12(b)(3). It argues that the documents that form the contract between Univar and Lonza provide that any disputes will be resolved by arbitration in Seattle, Washington. Univar asserts that in response to Lonza's Purchase Order 4500844047, which is attached as

*Exhibit 1* to *Defendant's Brief in Support of Motion to Dismiss for Improper Venue or, in the Alternative, to Join Third Party Defendants* [*see* Dkt. 33-1], Univar issued Invoice No. HB-673689.  The Invoice is dated June 15, 2011 and reflects shipment on that same date.  The Invoice states:

> Buyer agrees that all orders or purchases are subject to Univar's Standard Terms and Conditions of Sale as of the date of shipment available at www.univarusa.com/salesterms. All sales and orders are expressly limited to such terms, which may be updated from time to time. No other terms and conditions apply to any purchase or order unless agreed to in writing by both parties.

[*Univar USA Inc.'s First Am. Affirmative Defenses & Answer to Compl., Ex. 1* (dkt. 9-1).]

Univar's Standard Terms and Conditions of Sale provide:

> 1. TERMS.  These Terms and Conditions of Sale are the exclusive contract between Buyer and Seller, there are no terms, understandings, agreements, other than those stated herein.  Seller's … shipment of the Products … shall constitute an acceptance of Buyer's purchase order and these Terms and Conditions without any additional or different terms. These Terms and Conditions may not be altered amended, nor waived except in writing signed by an officer of the party to be bound thereby.  Acceptance of Buyer's purchase order is subject to acceptance of the express Terms and Conditions contained herein. If any provisions of Buyer's purchase order or other writings are different from or are otherwise in conflict with these Terms and Conditions, these Terms and Conditions shall govern and the terms contained in Buyer's purchase order or other writings are expressly rejected by Seller.

[*Id.* at 2.]  The Standard Terms and Conditions also contain an arbitration provision:

> 17. ARBITRATION.  The parties will submit any dispute related to this Agreement to arbitration in Seattle, Washington before one arbitrator under the American Arbitration Association's Commercial Arbitration Rules. … This Agreement is governed by the laws of the state of Washington.

[*Id.*]  Lonza did not expressly agree or object to any of the terms in Univar's Standard Terms and Conditions of Sale, including the arbitration provision.

4

*Discussion*

Univar contends that venue is improper and seeks dismissal under Fed. R. Civ. P. 12(b)(3), arguing that the arbitration provision requires arbitration of the parties' dispute outside this district. *See Faulkenberg v. CB Tax Franchise Sys.*, 637 F.3d 801, 808 (7th Cir. 2011). When deciding a Rule 12(b)(3) motion to dismiss, the Court accepts the Complaint's allegations as true unless contradicted by the defendant's affidavits, *see id.* at 806, and resolves any factual conflicts in the plaintiffs' favor, *Carroll v. CMH Homes, Inc.*, No. 4:12-CV-23-SEB-WGH, 2013 WL 960408, at *2 (S.D. Ind. Mar. 12, 2013).

Under the Federal Arbitration Act ("FAA"), an arbitration provision in a "contract evidencing a transaction involving commerce … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA embodies a "strong federal policy in favor of arbitration[.]" *Faulkenberg*, 637 F.3d at 808. However, "a party cannot be required to submit to arbitration any dispute which [the party] has not agreed so to submit." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). Thus, the Court's task is to determine whether the parties agreed to arbitrate their dispute.

Lonza and Univar agree that they entered into a binding contract, but they do not agree as to the terms of the contract, specifically whether the contract included an agreement to submit disputes to arbitration. Lonza contends that the contract is comprised of the documents attached as *Exhibit A* to its *Complaint*, which includes a 28-page document (the Quantity Contract) and Purchase Agreement Terms and Conditions.

5

Univar contends that the contract is comprised of the Quantity Contract, excluding the Lonza Purchase Agreement Terms and Conditions; Lonza's Purchase Order; and Univar's Invoice, which incorporates Univar's Standard Terms and Conditions of Sale, including a binding arbitration provision. [*See Def.'s Reply Br. Supp. Mot. Dismiss for Improper Venue* at 1.]

Thus, the parties agree that the contract documents include the Quantity Contract, which contains some agreed upon terms.[1] The Quantity Contract appears to be a requirements contract pursuant to which Univar agreed to sell Lonza products based on Lonza's production needs for approximately a three-year contract period. Pursuant to the Quantity Contract, by sending Univar a purchase order, Lonza would place orders with Univar for products to be shipped to Lonza. Then Univar had the product shipped to Lonza; and Univar sent Lonza an invoice corresponding to the purchase order. Lonza sent Univar Purchase Order No. 4500844047, ordering 45,000 pounds of Product. Univar had the Product shipped to Lonza and sent Lonza Univar's Invoice No. HB-673689, which Univar claims incorporated Univar's Standard Terms and Conditions of Sale, including an arbitration provision.

In arguing that Univar's Standard Terms and Conditions of Sale are part of the contract, Univar argues that Section 2-207(2) of Uniform Commercial Code, applies. *See* Ind. Code § 26-1-2-207(2). Section 2-207, Additional terms in acceptance or confirmation, provides:

---

[1] Whether the Quantity Contract attached as Exhibit A to the *Complaint* includes the page titled "Purchase Agreement Terms and Conditions" or not, the recommended outcome is the same.

    (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

    (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

    (a) the offer expressly limits acceptance to the terms of the offer;

    (b) they materially alter it; or

    (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

    (3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act.

Ind. Code § 26-1-2-207.[2]

Univar's Invoice does reference Univar's Standard Terms and Conditions of Sale, and attempts to incorporate such terms and conditions into the parties' contract. However, Univar agrees that the Quantity Contract and Purchase Order are included as part of the contract. [*See, e.g.*, *Def.'s Reply Br. Supp. Mot. Dismiss for Improper Venue* at 7.] The Purchase Order was an offer to purchase 45,000 pounds of Product. In return, Univar

---

[2] A federal court sitting in diversity applies the forum state's choice of law principles to determine the applicable substantive law. *See Volodarskiy v. Delta Airlines, Inc.*, 784 F.3d 349, 352 (7th Cir. 2015). Where, as here, there is no conflict between jurisdictions, the court need not conduct a choice of law analysis. *See Old Nat'l Bank v. Leasing Innovations, Inc.*, No. 1:11-cv-01539-TWP-DKL, 2013 WL 1339380, at *1 (S.D. Ind. Mar. 30, 2013), *order clarified on reconsideration*, 2013 WL 3188856 (S.D. Ind. June 21, 2013).

sent Lonza Invoice No. HB-673689 and shipped the Product to Lonza. The Quantity Contract contains no arbitration provision. The Purchase Order contains no arbitration provision. Because the Invoice expressly makes acceptance conditioned on Lonza's assent to the additional and different terms contained in the Standard Terms and Conditions of Sale, it did not operate as an acceptance of Lonza's offer to purchase the 45,000 pounds of Product, but served as a counteroffer. Therefore Univar's Invoice comes within the proviso in Section 2-207(1) rather than under Section 2-207(2). *See C. Itoh & Co. (America) Inc. v. Jordan Int'l Co.*, 552 F.2d 1228, 1235-36 (7th Cir. 1977) (concluding that language in defendant's acknowledgment form stating that "Seller's acceptance is … expressly conditional on Buyer's assent to the additional or different terms and conditions set forth below and printed on the reverse side" came within the Section 2-207(1) proviso"); *Sci. Components Corp. v. Isis Surface Mounting, Inc.*, 539 F. Supp. 2d 653, 657-58 (E.D.N.Y. 2008) (concluding that where the seller's "acknowledgment forms set forth additional and/or different terms and … clearly stated … 'ACCEPTANCE OF YOUR COMPANY'S ORDER IS EXPRESSLY MADE CONDITIONAL ON YOUR COMPANY'S ASSENT TO THE TERMS AND CONDITIONS ON THE FACE AND REVERSE SIDE OF THIS ACKNOWLEDGMENT,' … under U.C.C. § 2-207, [the seller's] forms did not serve as acceptances establishing contractual obligations but, instead, operated as counteroffers"); *Stemcor USA, Inc. v. Trident Steel Corp.*, 471 F. Supp. 2d 362, 367 (S.D.N.Y. 2006) ("If … the seller's response is 'expressly made conditional on assent' to the divergent terms, then the proviso in paragraph (1) [of 2-207] provides that no contract is formed, and instead the seller's response constitutes a counter-offer.").

The Court concludes that the arbitration provision in Univar's Invoice's Standard Terms and Conditions of Sale are not part of the contract between Lonza and Univar. The terms of the contract are those terms on which the writings of the parties have agreed. *See C. Itoh & Co. (America) Inc.*, 552 F.2d at 1237. As noted, the Quantity Contract does not provide for arbitration, and the Purchase Order says nothing about arbitration; yet, Univar's Invoice's Standard Terms and Conditions provide for arbitration. Thus, the parties' writings that Univar concedes make up the contract between Lonza and Univar do not agree that disputes would be submitted to arbitration. No agreement to arbitrate exists between Lonza and Univar, and Unviar's motion to dismiss for improper venue should be denied.[3]

The fact that Univar's Invoice expressly made acceptance conditional on Lonza's assent to the additional and different terms contained in the Univar Standard Terms and Conditions of Sale distinguishes both *Wilson Fertilizer & Grain, Inc. v. ADM Milling Co.*, 654 N.E.2d 848 (Ind. Ct. App. 1995), and *Schulze & Burch Biscuit Co. v. Tree Top, Inc.*, 831

---

[3] The *Complaint* alleges that the documents that are attached thereto as *Exhibit A* are the contract between Lonza and Univar, and Lonza's Purchase Agreement Terms and Conditions are included as part of *Exhibit A*. Thus it is alleged that the Lonza Purchase Agreement Terms and Conditions are part of the contract at issue. Because Univar provided no affidavits or other evidence to contradict the allegations in the *Complaint*, its incorporation-by-reference argument is beside the point. If UCC Section 2-207(2) were applicable, the additional and different terms referenced in the Univar Invoice would not become part of the contract because the Lonza Purchase Agreement Terms and Conditions expressly limit shipments to the terms included therein and expressly reject any different or additional terms and conditions proposed by the seller. However, even if the Court assumes that *Exhibit A t*o the *Complaint* actually contains two separate and distinct documents, the Quantity Contract, which is the 28-page document; and the Lonza Purchase Agreement Terms and Conditions [*see* Def.'s Reply Br. Supp. Mot. Dismiss Improper Venue at 3-4], the outcome would be the same because Univar's acceptance of the offer in Lonza's Purchase Order was expressly made conditional on Lonza's assent to the additional or different terms. *See* Ind. Code 26-1-2-207(1).

F.2d 709 (7th Cir. 1987), on which Univar relies, where acceptance was not conditioned on the buyer's assent to the additional terms in the acceptance or confirmation.

Univar requested that in the event the Court were to deny its motion to dismiss, that it be allowed to amend its pleadings pursuant to Fed. R. Civ. P. 14(a)(1) to add third-party defendants. It seeks to add Lyondell, the alleged manufacturer of the chemical at issue, and Eastern Bulk Transport, Inc., the party that shipped the chemical from Lyondell to Lonza. Plaintiffs do not oppose the request to add third-party defendants. The Court has considered the request and will recommend that it be granted.

*Conclusion*

For the foregoing reasons, the undersigned recommends: (1) that *Defendant's Motion to Dismiss for Improper Venue Or, in the Alternative, to Join Third Party Defendants* [dkt. 32] be denied as to the request to dismiss and granted in the alternative such that Defendant be allowed to amend its pleadings to add third party defendants Lyondell Chemical Company and Eastern Bulk Transport, Inc., and (2) that *Defendant's Motion Requesting Oral Argument* [dkt. 34] be denied.

**ENTERED THIS DATE:** 12/01/2015

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

**Notice Regarding Objections**

Within fourteen days of being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). The district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection may result in forfeiture of the right to *de novo*

determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed.  *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**The parties should not expect extensions of time to file either objections or responses. No replies will be permitted.**


Electronic Distribution to All Counsel of Record