**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| NICE-PAK PRODUCTS, INC., | ) | |
| FEDERAL INSURANCE COMPANY, and | ) | |
| LONZA, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-00409-TWP-DKL |
| | ) | |
| UNIVAR USA INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ADOPTING REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant, Univar USA Inc.'s ("Univar"), Objection to

the Magistrate Judge's Report and Recommendation (Filing No. 51).  On August 10, 2015, Univar

filed a Motion to Dismiss for Improper Venue (Filing No. 32) arguing that the underlying contract

dispute in this matter was subject to an arbitration agreement.  The motion was referred to the

Magistrate Judge for a Report and Recommendation (Filing No. 46).  On December 1, 2015, the

Magistrate Judge submitted her Report and Recommendation that the Motion to Dismiss and

Motion Requesting Oral Argument (Filing No. 34) be denied.  Univar filed a timely objection.  For

the reasons stated below, the Court overrules Univar's Objection and adopts the Magistrate Judge's

Report and Recommendation.

## I.  BACKGROUND

The following facts are accepted as true for purposes of the Motion to Dismiss and all

reasonable inferences are drawn in a light most favorable to the non-moving party.  *See Tamayo*

*v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).  Univar raised only a few objections to the

Magistrate Judge's recitation of the facts, and the Court repeats the uncontested facts below, noting

Univar's objections and adding a few modifications for clarity.

Plaintiff, Nice-Pak Products, Inc. ("Nice-Pak"), is engaged in the business of producing

pre-moistened wipe products for cleaning, sanitization, healthcare, cosmetics and personal

hygiene.  Plaintiff, Lonza, Inc. ("Lonza"), is in the business of supplying pharmaceutical and

biotechnology industries with biopharmaceuticals.  Defendant Univar is engaged in the business

of distributing chemicals and chemistry related products to its customers.

The parties agree that Lonza and Univar entered into a quantity contract for various

products, including propylene glycol USP ("PG"), for a term extending from November 30, 2009

to December 31, 2012.  (Filing 1-1 at 19-46.)  Plaintiffs assert that this quantity contract also

included Lonza's Purchase Agreement Terms and Conditions ("Lonza's Terms and Conditions").

Univar disputes that Lonza's Terms and Conditions were made a part of the quantity contract but

failed to file an affidavit to support its contention.  Lonza's Terms and Conditions provide, in

relevant part, as follows,

> 1. GENERAL.  Each shipment received by Lonza from Seller shall be deemed to
> be only upon the terms, including the Standard T&Cs in this Agreement, except as
> they may be added to, modified, superseded, or otherwise altered by Lonza,
> notwithstanding any terms and conditions that may be contained in any
> acknowledgment, invoice or other form of Seller and notwithstanding Lonza's act
> of accepting or paying for any shipment or any similar act of Lonza, and Lonza
> hereby rejects any different or additional terms and conditions proposed by Seller.
> . . .
> 16. MISCELLANEOUS. … This Agreement shall be governed by and construed
> in accordance with the laws of the state of New York without reference to its
> conflicts of law principles.

(Filing No. 1-1 at 47.)

The parties agree that, on June 8, 2011, Lonza placed an order with Univar for 45,000 pounds of PG under Purchase Order 4500844047, pursuant to the quantity contract.  On June 17, 2011, Lonza received 45,160 pounds of PG from Univar, for which Lonza made payment.

On June 27, 2011, ten days after the PG was delivered to Lonza, Lonza received an invoice from Univar.  The invoice states, in relevant part, as follows,

> Buyer agrees that all orders or purchases are subject to Univar's Standard Terms and Conditions of Sale as of the date of shipment available at www.univarusa.com/salesterms.  All sales and orders are expressly limited to such terms, which may be updated from time to time.  No other terms and conditions apply to any purchase or order unless agreed to in writing by both parties.

(Filing No. 9-1 at 1.)  Univar's Standard Terms and Conditions of Sale provide, in relevant part, as follows,

> 1. TERMS. These Terms and Conditions of Sale are the exclusive contract between Buyer and Seller, there are no terms, understandings, agreements, other than those stated herein. Seller's … shipment of Products … shall constitute an acceptance of Buyer's purchase order and these Terms and Conditions without any additional or different terms. These Terms and Conditions may not be altered[sic] amended, nor waived except in writing signed by an officer of the party to be bound thereby. *Acceptance of Buyer's purchase order is subject to acceptance of the express Terms and Conditions contained herein.*  If any provisions of Buyer's purchase order or other writings are different from or are otherwise in conflict with these Terms and Conditions, these Terms and Conditions shall govern and the terms contained in Buyer's purchase order or other writings are expressly rejected by Seller.
> . . . .
> 17. ARBITRATION.  The parties will submit any dispute related to this Agreement to arbitration in Seattle, Washington before one arbitrator under the American Arbitration Association's Commercial Arbitration Rules. … This Agreement is governed by the laws of the state of Washington.

(Filing No. 9-1 at 2) (emphasis added).

Thereafter, Lonza added the PG it received from Univar to a preservative product that it sold to Nice-Pak for use in manufacturing baby wipes.  However, following delivery, Nice-Pak discovered that the PG was contaminated.  Lonza also determined that the PG it received from Univar was contaminated.  As a result, both Nice-Pak and Lonza suffered damages.

Plaintiff, Federal Insurance Company ("Federal") provided insurance coverage for damages occurring at Nice-Pak's business locations.  Pursuant to the insurance policy, Federal reimbursed Nice-Pak in an amount in excess of $900,000.00 and became legally, contractually, and equitably subrogated to the rights of Nice-Pak against third-parties to the extent of the payments made.

## II.  LEGAL STANDARD

### A.    Review of the Magistrate Judge's Report and Recommendation

A district court may assign dispositive matters to a magistrate judge, in which case the magistrate judge may submit to the district judge only a report and recommended disposition, including any findings of fact.  28 U.S.C. § 636(b)(1)(B) (2012); Fed. R. Civ. P. 72(b)(1).  *See also Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760 (7th Cir. 2009).  The magistrate judge's recommendation on a dispositive matter is not a final order, and the district judge makes the ultimate decision to "accept, reject, or modify" the findings and recommendations, and the district court need not accept any portion as binding.  28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 72(b)(3).  *See also Schur*, 577 F.3d at 760-61.

After a magistrate judge makes a report and recommendation, either party may object within fourteen days of being served with a copy of the same.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  When a party raises specific objections to findings and recommendations made within the magistrate judge's report, the district court is required to review those objections *de novo*, determining for itself whether the magistrate judge's decisions as to those issues are supported by substantial evidence or were the result of an error of law.  28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 72(b)(3).  *See also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).  The court may, however, defer to those conclusions to which timely objections have not been raised

4

by a party. *Schur*, 577 F.3d at 760-61. Further, if a party fails to object to a magistrate judge's report and recommendation, or objects on some issues and not others, the party waives appellate review of the issues to which the party has not objected. *Johnson*, 170 F.3d at 739.

**B.      12(b)(3) Motion to Dismiss**

A motion seeking dismissal based on a forum selection clause, including an arbitration clause, is properly treated as an objection to venue and properly raised under Federal Rule of Civil Procedure 12(b)(3). *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007). Further, the Seventh Circuit has held that a Rule 12(b)(3) motion to dismiss for improper venue, rather than a motion to stay or to compel arbitration, is the proper procedure to use when an arbitration clause requires arbitration outside the confines of a federal district court's jurisdiction. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011).

The plaintiff bears the burden of establishing that venue is proper. *Carroll v. CMH Homes, Inc.*, 4:12-CV-23-SEB-WGH, 2013 WL 960408, *2 (S.D. Ind. Mar. 12, 2013). When deciding a Rule 12(b)(3) motion to dismiss, the court accepts the complaint's allegations as true unless contradicted by the defendant's affidavits. *Nagel v. ADM Inv'r Servs., Inc.*, 995 F. Supp. 837, 843 (N.D. Ill. 1998). Further, the court resolves any factual conflicts in the plaintiff's favor. *Carroll*, 2013 WL 960408 at *2. Finally, the court is not obligated to limit its consideration to the pleadings when deciding a motion to dismiss under Rule 12(b)(3). *Faulkenberg*, 637 F.3d at 809-10.

## III.  DISCUSSION

The parties agree that Lonza and Univar entered into a binding contract, but do not agree as to which documents were included in the contract. Univar contends that the contract is comprised of the 28-page quantity contract, Lonza's Purchase Order Number 4500844047,

Univar's invoice, and Univar's Standard Terms and Conditions of Sale. (*See* Filing No. 38 at 4.) The Plaintiffs agree that the contract includes the 28-page quantity contract and Lonza's Purchase Order Number 4500844047. However, Plaintiffs also assert that the contract additionally includes Lonza's Terms and Conditions, and that the contract excludes Univar's invoice and Univar's Standard Terms and Conditions of Sale. (*See* Filing No. 37 at 8-9.)

At issue in Univar's motion to dismiss is whether the contract included a binding arbitration agreement. As the Magistrate Judge correctly pointed out, regardless of which documents were included in the contract, the outcome is the same. Under either party's understanding of the relevant contract documents, the contract does not include a binding arbitration agreement.

Under the Federal Arbitration Act ("FAA"), an arbitration provision in a "contract evidencing a transaction involving commerce … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA embodies a strong federal policy in favor of arbitration. *Faulkenberg*, 637 F.3d at 808. However, "a party cannot be required to submit to arbitration any dispute which [the party] has not agreed so to submit." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012).

To begin, the Court notes that the parties agree with the Magistrate Judge's determination that a choice of law analysis is not necessary in this case, given that the substantive contract law from the potential jurisdictions, Indiana (forum state), New York (Lonza's forum selection clause state), and Washington (arbitration agreement state), do not conflict with regard to the issues presented in Univar's motion. (*See* Filing No. 37 at 13; Filing No. 38 at 9 n.1; Filing No. 49 at 7 n.2.) *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) ("[t]he choice of law issue may be waived . . . if the party fails to assert it.").

Ordinarily, a federal court sitting in diversity applies the forum state's choice of law principles to determine the applicable substantive law.  *Id*.  However, as the Magistrate Judge correctly pointed out, when there is no conflict between jurisdictions, the court need not conduct a choice of law analysis.  *See Loos v. Farmers Tractor and Implement Co., Inc.*, 738 F. Supp. 323, 324 (S.D. Ind. 1990); *Int'l Admins., Inc. v. Life Ins. Co. of N. Am.*, 753 F.2d 1373, 1376 n.4 (7th Cir. 1985).  Accordingly, the undersigned will follow the practice of both the Magistrate Judge and the parties and will apply the substantive law from each of the potential jurisdictions as necessary to resolve the issues presented.  *See McCoy*, 760 F.3d at 684 ("[w]hen no party raises the choice of law issue, the federal court may simply apply the forum state's substantive law"); *Loos*, 738 F. Supp. at 324.

The arbitration clause at issue only appears in Univar's Standard Terms and Conditions of Sale, a document which Univar contends was incorporated by reference via a clause in Univar's invoice, albeit in tiny print.  Because Univar's invoice was received ten days after delivery of the allegedly contaminated PG, the provisions in Univar's invoice and Univar's Standard Terms and Conditions of Sale are correctly understood to be additional terms that were introduced during the course of the parties' dealings rather than pursuant to the initial quantity contract.  The parties do not dispute that such issues are controlled by Section 2-207 of the Uniform Commercial Code, commonly referred to as the Battle of the Forms.

Indiana's version of Section 2-207 provides, in relevant part, as follows,

(1)  A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2)  The additional terms are to be construed as proposals for addition to the contract.  Between merchants such terms become part of the contract unless:

(a)  the offer expressly limits acceptance to the terms of the offer;

(b)  they materially alter it; or

(c)  notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3)  Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract.  In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act.

Ind. Code § 26-1-2-207.

**A.**      **Section 2-207(2)**

The Plaintiffs assert that Lonza's Terms and Conditions were made a part of the contract between the parties.  Lonza's Terms and Conditions include a provision in the first section, which states in relevant part as follows,

> 1. GENERAL.  *Each shipment received by Lonza from Seller shall be deemed to be only upon the terms, including the Standard T&Cs in this Agreement*, except as they may be added to, modified, superseded, or otherwise altered by Lonza, notwithstanding any terms and conditions that may be contained in any acknowledgment, invoice or other form of Seller and notwithstanding Lonza's act of accepting or paying for any shipment or any similar act of Lonza, and *Lonza hereby rejects any different or additional terms and conditions proposed by Seller*.

(Filing No. 1-1 at 47) (emphasis added).  Accordingly, assuming the Plaintiffs' understanding of the documents that constituted the contract is correct, this language is sufficient to bar Univar's arbitration clause under both Section 2-207(2)(a) and (c) because Lonza had limited the terms of the contract to those in Lonza's Terms and Conditions and because Lonza had previously objected to any later-added terms suggested by Univar.  Indeed, the Magistrate Judge concluded the same. (*See* Filing No. 49 at 9 n.3.)

Univar does not object to manner in which the Magistrate Judge applied Section 2-207(2). Instead, Univar objects to the factual conclusion that Lonza's Terms and Conditions was part of the parties' contract.  In this regard, Univar notes that the quantity contract does not reference

Lonza's Terms and Conditions and notes that the "two documents" are paginated differently.  (*See* Filing No. 38 at 6-7; Filing No. 52 at 11-12.)   Nevertheless, Univar did not provide any affidavits to support its assertion, despite having multiple opportunities to do so pursuant to either its motion to dismiss or its objection to the Report and Recommendation.  Rather than submit such affidavits, Univar admits that it does not have any supporting affidavits, an admission that dooms its argument at this stage of the litigation.  (*See* Filing No. 52 at 12.)

While the Plaintiffs have the burden of establishing that venue is proper, the Court accepts the complaint's allegations as true unless contradicted by Univar's affidavits.  *Nagel*, 995 F. Supp. at 843.  Further, the Court is obligated to resolve any factual conflicts in the Plaintiffs' favor. *Carroll*, 2013 WL 960408 at *2.  Univar concedes as much.  (*See* Filing No. 52 at 13.)  However, Univar argues that the differences in the documents are sufficient to contradict the Plaintiffs' allegation that Lonza's Terms and Conditions were part of the parties' contract.  *See N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998) ("when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations"); *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chi.*, 927 F.2d 988, 991 (7th Cir. 1991) ("[w]here the allegations of a pleading are inconsistent with the terms of a written contract attached as an exhibit, the terms of the latter, fairly construed, must prevail over the averments differing therefrom.").

The Court is not persuaded that the differences between the documents, which Univar identifies, clearly show that Lonza's Terms and Conditions were not included in the parties' contract.  This is particularly true given the requirement that this Court must resolve all factual conflicts in the Plaintiffs' favor and given the fact that Univar failed to identify even a single executive officer who could attest that Lonza's Terms and Conditions were never made a part of

the parties' contract. While it is not Univar's burden to demonstrate that venue is improper, the

Court is required to assume the Plaintiffs' version of the facts as true, particularly when not

confronted with clear evidence to the contrary.

As a result, because the Magistrate Judge was entitled to assume that Lonza's Terms and

Conditions were part of the parties' contract, the Magistrate Judge was correct in concluding that

Section 2-207(2) barred Univar's arbitration clause from becoming part of the contract.

**B.**     **Section 2-207(1)**

Nevertheless, even assuming Univar's understanding of the documents that formed the

parties' contract, the outcome is the same. Univar contends that the contract is comprised of the

quantity contract, Lonza's Purchase Order, Univar's invoice, and Univar's Standard Terms and

Conditions of Sale, exclusive of Lonza's Terms and Conditions. Univar's Standard Terms and

Conditions of Sale contain the only arbitration clause in any of the parties' documents.

Relevant to this analysis is conditional language in both Univar's invoice and Univar's

Standard Terms and Conditions of Sale. For instance, Univar's invoice states, in relevant part,

that:

> Buyer agrees that *all orders or purchases are subject to Univar's Standard Terms and Conditions of Sale* as of the date of shipment available at www.univarusa.com/salesterms. *All sales and orders are expressly limited to such terms*, which may be updated from time to time. No other terms and conditions apply to any purchase or order unless agreed to in writing by both parties.

(Filing No. 9-1 at 1) (emphasis added). Further, Univar's Standard Terms and Conditions of Sale

provide, in relevant part, as follows:

> 1. TERMS. These Terms and Conditions of Sale are the exclusive contract between Buyer and Seller, there are no terms, understandings, agreements, other than those stated herein. Seller's … shipment of Products … shall constitute an acceptance of Buyer's purchase order and these Terms and Conditions without any additional or different terms. These Terms and Conditions may not be altered[sic] amended, nor waived except in writing signed by an officer of the party to be bound thereby.

> *Acceptance of Buyer's purchase order is subject to acceptance of the express Terms and Conditions contained herein.* If any provisions of Buyer's purchase order or other writings are different from or are otherwise in conflict with these Terms and Conditions, these Terms and Conditions shall govern and the terms contained in Buyer's purchase order or other writings are expressly rejected by Seller.

(Filing No. 9-1 at 2) (emphasis added).

Of particular relevance is the provision in Univar's Standard Terms and Conditions of Sale that makes Univar's acceptance of Lonza's purchase order conditional upon Lonza's acceptance of Univar's Standard Terms and Conditions of Sale. (*See* Filing No. 9-1 at 2) ("[a]cceptance of Buyer's purchase order is subject to acceptance of the express Terms and Conditions contained herein."). Courts have routinely interpreted similar conditional language in a seller's response, wherein the seller indicates that the seller's acceptance of the buyer's purchase order is conditional on the buyer's acceptance of the seller's additional terms, to be a counter-offer, thereby preventing the additional terms in the seller's response from becoming part of the contract under Section 2-207(1). *Stemcor USA, Inc. v. Trident Steel Corp.*, 471 F. Supp. 2d 362, 367 (S.D.N.Y. 2006) (applying New York contract law) ("[i]f … the seller's response is 'expressly made conditional on assent' to the divergent terms, then the proviso in paragraph (1) [of 2-207] provides that no contract is formed, and instead the seller's response constitutes a counter-offer.")

*See, e.g.*, *Am. Tempering, Inc. v. Craft Architectural Metals Corp.*, 483 N.Y.S.2d 304, 305 (N.Y. App. Div. 1985) (applying New York contract law) (concluding that language in a seller's confirmation form, stating that "[i]f the terms and conditions of this acknowledgment differ in any way from the terms and conditions of the purchaser's order[,] the acknowledgment . . . shall not be effective as an acceptance of such order *unless the purchaser assents* to the terms and conditions herein which shall constitute the entire agreement between the parties", fell within Section 2-207(1) and did not operate as an acceptance of the buyer's purchase order) (emphasis added; *C.*

11

*Itoh & Co. (America) Inc. v. Jordan Int'l Co.*, 552 F.2d 1228, 1235-36 (7th Cir. 1977) (applying New York contract law) (concluding that language in a seller's acknowledgment form, stating that "Seller's acceptance is … *expressly conditional on Buyer's assent* to the additional or different terms and conditions set forth below and printed on the reverse side", fell within Section 2-207(1) and operated as a counter-offer to the buyer's purchase order) (emphasis added); *Sci. Components Corp. v. Isis Surface Mounting, Inc.*, 539 F. Supp. 2d 653, 657-58 (E.D.N.Y. 2008) (applying New York contract law) (concluding that language in a seller's acknowledgment form, stating that "ACCEPTANCE OF YOUR COMPANY'S ORDER IS *EXPRESSLY MADE CONDITIONAL ON YOUR COMPANY'S ASSENT* TO THE TERMS AND CONDITIONS ON THE FACE AND REVERSE SIDE OF THIS ACKNOWLEDGMENT", fell within Section 2-207(1) and operated as a counter-offer rather than an acceptance of the buyer's purchase order) (emphasis added).

Nevertheless, Univar argues that the "subject to" language in its invoice and Standard Terms and Conditions of Sale did not "expressly condition" Lonza's acceptance on Univar's additional terms.  *See, e.g., Stemcor USA,* 471 F. Supp. 2d at 364, 367-69. (applying New York contract law) (concluding that language in the seller's acknowledgement form, stating that "[t]his contract is made between the buyer and seller . . . subject to the terms and conditions as stipulated hereafter", did not fall within Section 2-207(1), noting that the phrase "subject to", by itself, did not expressly require assent to additional terms); *CBS, Inc. v. Auburn Plastics, Inc.*, 67 A.D.2d 811, 812 (1979) (applying New York contract law) (concluding that language in the seller's acknowledgement form, stating that "(t)his sale subject to the terms and conditions of our quotation pertinent to this sale", did not fall within Section 2-207(1), because the acknowledgement did not "expressly make conditional . . . [buyer's] assent to the different terms"); *Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161, 1167-68 (6th Cir. 1972) (applying Tennessee contract law)

12

(concluding that language in the seller's acknowledgement form stating that "[t]he acceptance of your order is subject to all of the terms and conditions on the face and reverse side hereof", did not fall within Section 2-207(1), noting that "it is not enough that an acceptance is expressly conditional on additional or different terms; rather, an acceptance must be made *expressly* conditional on the [buyer's] *assent* to those terms") (emphasis in original).

However, the distinguishing characteristic in Univar's documents is that the phrase "subject to" is immediately followed by the phrase "*acceptance of* the express Terms and Conditions contained herein" (*See* Filing No. 9-1 at 2) (emphasis added).  Therefore, unlike the cases cited by Univar, Univar's Standard Terms and Conditions of Sale requires Lonza's *acceptance* of Univar's additional terms as a pre-condition to Univar's acceptance of Lonza's purchase order.

Given this distinction, the Court concludes that the language in Univar's invoice and Standard Terms and Conditions of Sale is more like the language in those cases where the seller's acknowledgment constituted a counter-offer under Section 2-207(1).  As a result, the Court agrees with the Magistrate Judge's conclusion that the arbitration provision in Univar's Standard Terms and Conditions of Sale fell within Section 2-207(1) and was not included in the parties' contract.[1] Under either interpretation of which documents made up the parties' contract, the Magistrate Judge

---

[1] The Court agrees with the Magistrate Judge's conclusion that this case is distinguished from *Wilson Fertilizer & Grain, Inc. v. ADM Milling Co.*, 654 N.E.2d 848 (Ind. Ct. App. 1995) and *Schulze & Burch Biscuit Co. v. Tree Top, Inc.*, 831 F.2d 709 (7th Cir. 1987), both of which concluded that the seller's additional terms were made part of the contract under 2-207(2)(b).  Unlike *Wilson* and *Schulze*, Univar's additional terms are better understood as a counter-offer than a valid acceptance.  *See Wilson*, 654 N.E.2d at 851 (explaining that Section 2-207(2) was applicable instead of Section 2-207(1) because "the parties agree that [the seller's] confirmation form operated as a valid acceptance and that a contract has been formed"), *Schulze*, 831 F.2d at 715 (applying Illinois contract law) (explaining that Section 2-207(2) was applicable because "the offer did not expressly limit acceptance to its terms"). Under Univar's understanding of the documents that made up the contract, the Court concurs that this case is properly analyzed under Section 2-207(1) rather than Section 2-207(2)(b); and, therefore, *Wilson* and *Schulze* are not applicable.

was correct in determining that Univar's arbitration agreement was not a part of the parties' contract.  Accordingly, dismissal for improper venue is not appropriate.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, the Univar's Objection to the Report and Recommendation (Filing No. 49) is **OVERRULED** and the Court **ADOPTS** the Magistrate Judge's recommendation and **DENIES** Univar's Motion to Dismiss for Improper Venue (Filing No. 32) and Univar's Motion Requesting Oral Argument (Filing No. 34).

Additionally, the Court **ADOPTS** the Magistrate Judge's recommendation and Univar is granted leave leave to add Lyondell Chemical Company and Eastern Bulk Transport, Inc. as third-party defendants (Filing No. 32).

**SO ORDERED.**

Date:  2/12/2016

_____

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Charles F. Miller, Jr
ATTORNEY AT LAW
cfmjratty@iquest.net

Marisa L. Saber
COZEN O'CONNOR
msaber@cozen.com

Philip T. Carroll
COZEN O'CONNOR (Chicago)
pcarroll@cozen.com

John W. Allen
VARNUM RIDDERING SCHMIDT & HOWLETT LLP
jwallen@varnumlaw.com

Scott Roger Sikkenga
VARNUM RIDDERING SCHMIDT & HOWLETT LLP
srsikkenga@varnumlaw.com