UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NICE-PAK PRODUCTS, INC., FEDERAL INSURANCE COMPANY, and LONZA, INC., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 1:15-cv-00409-TWP-TAB ) |
| UNIVAR USA INC., | ) ) |
| Defendant. | ) ) ) |
| UNIVAR USA INC., | ) ) |
| Third Party Plaintiff, | ) ) |
| v. | ) ) |
| LYONDELL CHEMICAL COMPANY, and EASTERN BULK TRANSPORT, INC, | ) ) ) |
| Third Party Defendants. | ) |

### ENTRY ON THIRD-PARTY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Third-Party Plaintiff Lyondell Chemical Company ("Lyondell") (Filing No. 118). Also before the Court is a Motion for Oral Argument on the Motion for Summary Judgment filed by Lyondell (Filing No. 120). For the following reasons, the Court **DENIES** Lyondell's Motion for Summary Judgment and **DENIES** the request for oral argument.

### I. BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Third-Party Plaintiff

Univar USA, Inc. ("Univar"), as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Plaintiff Nice-Pak Products, Inc. ("Nice-Pak"), is engaged in the business of producing pre-moistened wipe products for cleaning, sanitization, healthcare, cosmetics and personal hygiene. Plaintiff Lonza, Inc. ("Lonza"), is in the business of supplying pharmaceutical and biotechnology industries with biopharmaceuticals. Univar is engaged in the business of distributing chemicals and chemistry related products to its customers.

On June 23, 2008, Univar and Lyondell entered into a Master Sales Conditions agreement ("the Agreement"), which states "[Lyondell] shall sell and [Univar] shall purchase for resale" certain products manufactured by Lyondell, including propylene glycol USP ("PG")[1]. (Filing No. 119-2 at 2.) Lonza, one of Univar's customers, entered into a quantity contract with Univar for various products, including PG. On June 8, 2011, Lonza placed an order with Univar for 45,000 pounds of PG, pursuant to the quantity contract. That same day, Univar placed an order with Lyondell for 45,000 pounds of PG. Thereafter, Lyondell shipped the PG from its manufacturing facility in Texas to a storage tank at the Bayonne, New Jersey facility of International-Matex Tank Terminals ("International-Matex"). Univar then arranged for Defendant Eastern Bulk Transport, Inc. ("EBT") to transport the PG from International-Matex to Lonza's facility in Williamsport, Pennsylvania. (*See* Filing No. 119-5; Filing No. 119-7.)

---

[1] Propylene Glycol (PG) USP/EP is a pharmaceutical grade of Monopropylene Glycols with a specified purity greater than 99.8%. PG USP/EP is an important ingredient for a multitude of uses, including: solvent for aromatics in the flavor-concentrate industry; wetting agent for natural gums; ingredient in the compounding of citrus and other emulsified flavors; solvent in elixirs and pharmaceutical preparations; solvent and coupling agent in the formulation of sun screen, lotion, shampoos, shaving creams and other similar products; emulsifier in cosmetic and pharmaceutical creams. See http://www.dow.com/propyleneglycol/products/pg_uspep.htm.

On June 17, 2011, Lonza received 45,160 pounds of PG from Univar.  Lonza added the PG it received from Univar to a preservative product that it sold to Nice-Pak for use in manufacturing baby wipes.  Following delivery, Nice-Pak discovered the PG exuded an unusual odor.  Nice-Pak notified Lonza and Lonza determined the PG was contaminated.  On August 1, 2011, Lonza informed Univar of the contamination and, in turn, Univar notified Lyondell and EBT.  Thereafter, Lyondell's laboratory tested a sample of PG received directly from Lonza and also found the sample contaminated.

As a result of the contamination, both Nice-Pak and Lonza suffered damages and Plaintiff Federal Insurance Company ("Federal") provided insurance coverage to Nice-Pak in an amount in excess of $900,000.00.  On February 12, 2015, Federal, Nice-Pak and Lonza filed a Complaint against Univar, asserting breach of warranties; breach of contract; negligence; and express indemnity.  ([Filing No. 1-1 at 5-15](Filing No. 1-1 at 5-15).)  On August 10, 2015, Univar filed a motion to dismiss and alternatively moved to join third-party defendants.  ([Filing No. 33](Filing No. 33).)  Univar's request was referred to the Magistrate Judge and, on February 12, 2016, the Court entered an Order adopting the Magistrate Judge's recommendation to deny Univar's Motion to Dismiss, but to grant Univar leave to add third-party defendants.  ([Filing No. 56](Filing No. 56).)  On July 22, 2016, Univar filed an Amended Third-Party Complaint against Lyondell and EBT, seeking indemnification for breach of contract.  ([Filing No. 94](Filing No. 94).)  Lyondell now moves for summary judgment, asserting it fulfilled its obligation to provide quality PG in accordance with the Agreement, and any contamination to the PG occurred after Univar possessed title and risk of loss.  ([Filing No. 118](Filing No. 118).)

## II.     SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Matsushita Electric Industrial Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III. DISCUSSION

Lyondell contends that there are no genuine issues of material fact regarding the unambiguous language of the Agreement, therefore, Lyondell is entitled to summary judgment on Univar's cause of action for breach of contract and indemnification. The issues before the Court are: 1) whether Lyondell fulfilled its obligations to provide quality PG in accordance with the Agreement, and 2) whether the contamination to the PG occurred after Univar possessed title and risk of loss. The Court notes that all parties agree that Texas law applies.

#### A. Quality PG

Lyondell argues that it is entitled to summary judgment because the Agreement makes clear that Lyondell's laboratory analysis of the PG determines the quality and shall be conclusively binding. The Agreement specifically states, in relevant part:

> Quality shall be determined based on [Lyondell's] laboratory analysis of samples taken by [Lyondell] at the point of shipment…[Lyondell's] laboratory analysis and methods shall determine whether product specifications have been met and shall be conclusively binding, unless [Univar] proves to [Lyondell's] reasonable satisfaction by a preponderance of evidence that [Lyondell's] analysis report is erroneous.

([Filing No. 119-2 at 5](Filing No. 119-2 at 5)). Lyondell contends that it employed a third-party testing company, SGS North America, Inc. ("SGS"), to test the PG on February 13, 2011 and April 17, 2011—prior to shipping the PG in June 2011. Both tests resulted in satisfactory quality, odor, appearance, acidity, among other quality metrics. On July 25, 2011, after learning of the contaminated PG received by Lonza, SGS tested a retained PG sample from the batch sold to Lonza and concluded "[n]othing out of the ordinary is noted." ([Filing No. 119-10](Filing No. 119-10).)

In response, Univar argues that the Court should deny the motion for summary judgment because SGS, rather than Lyondell, tested the PG at issue. Univar also notes that "[q]uality shall be determined based on…samples taken by [Lyondell] *at the point of shipment*"; however,

International-Matex employee, Alfred Shay, and Lyondell's Technical Services Specialist, David Eaves, admitted to having no recollection of when SGS retained the PG sample ([Filing No. 119-2 at 5](); [Filing No. 137-1 at 3](); [Filing No. 137-2 at 2-5]()) (emphasis added).

The Court concludes that the plain language of the Agreement makes clear that "[*Lyondell's*] laboratory analysis…shall be conclusively binding" ([Filing No. 119-2 at 5]()) (emphasis added). The Agreement, however, does not bind Univar to tests conducted by SGS or any other third party. *See Glassell Producing Co. v. Jared Res., Ltd*., 422 S.W.3d 68, 76 (Tex. App. 2014) ("If the plain language of a contract is unambiguous, the contract will be enforced as written and extrinsic, or parol, evidence will not be admissible to create an ambiguity or to give the contract a meaning different from the plain language"). Accordingly, because Univar is bound only by Lyondell's laboratory analysis, the Court **denies** Lyondell's Motion on this issue and finds a material question of fact exists regarding the quality of the PG when shipped by Lyondell. The Court also notes, even if the Agreement bound Univar to tests conducted by SGS, an issue of fact remains as to whether the July 25, 2011 PG sample—tested by SGS—was retained after EBT received the shipment and loaded the PG onto its equipment, as required by the Agreement.

**B.** **Title and Risk of Loss**

Lyondell further argues it cannot be held liable for any contamination that resulted after the PG was loaded onto EBT's equipment because, under the Agreement, title and risk of loss passed from Lyondell to Univar. (*See* [Filing No. 119-2 at 4]().) For the reasons explained above, the Court **denies** Lyondell's Motion on this issue.

**C.** **Damages**

In the alternative, Lyondell asserts, even if a material question of fact exists regarding the quality of the PG at the time of shipment, the Court should limit Univar's damages to the sale price

of the PG—$42,902.00. Lyondell relies on Section 20 of the Agreement, which states:

> EXCEPT FOR CLAIMS UNDER SECTION 21…IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR ANY LOST PROFITS OR SPECIAL, CONSEQUENTIAL, INCIDENTAL, OR INDIRECT LOSSES OR DAMAGES OR COSTS OF LITIGATION IN RESPECT TO THE SALE OR CONTEMPLATED SALE OF PRODUCT COVERED BY THIS AGREEMENT OR TO ANY OTHER MATTER COVERED BY OR ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT.

*Id.* at 9.

The Court denies Lyondell's request because the exception under Section 21 makes clear that "[Lyondell] shall indemnify, defend and hold [Univar]...harmless from and against any claim…and against all liability, damages, losses, costs and expenses caused by (a) [Lyondell's] breach of this Agreement, or (b) the negligence or willful misconduct of [Lyondell], its employees or agents." *Id.* Accordingly, because Univar seeks indemnity based on Lyondell's breach of the Agreement, the exception applies and Lyondell's request for summary judgment to limit damages is **denied**.

### IV. CONCLUSION

For the reasons stated above, Third-Party Defendant Lyondell Chemical Company's Motion for Summary Judgment (Filing No. 118) is **DENIED**. The Court is able to resolve the summary judgment issues without the need for a hearing, therefore, the Motion for Oral Argument on the Motion for Summary Judgment (Filing No. 120), is **DENIED as moot**.

**SO ORDERED.**

Date: 10/4/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Fred Anthony Paganelli
tony@tonypaganelli.com

Charles F. Miller, Jr
ATTORNEY AT LAW
cfmjratty@iquest.net

Marisa L. Saber
COZEN O'CONNOR
msaber@cozen.com

Philip T. Carroll
COZEN O'CONNOR (Chicago)
pcarroll@cozen.com

Julie E. Maurer
LEWIS BRISBOIS BISGAARD & SMITH LLP
julie.maurer@lewisbrisbois.com

Patrick B. Healy
LEWIS BRISBOIS BISGAARD & SMITH LLP
patrick.healy@lewisbrisbois.com

Venus G. Booth
LEWIS BRISBOIS BISGAARD & SMITH, LLP
venus.booth@lewisbrisbois.com

Stephanie Lauren Grass
PAGANELLI LAW GROUP
stephanie@paganelligroup.com

Scott Roger Sikkenga
VARNUM LLP
srsikkenga@varnumlaw.com

John W. Allen
VARNUM RIDDERING SCHMIDT & HOWLETT LLP
jwallen@varnumlaw.com